UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| MANAL HASSAN and TAREK KHAIRALLAH, | : : : | Case No. |
| Plaintiffs, | : : : | |
| v. | : : : | **VERIFIED COMPLAINT** |
| CITY OF TRENTON (NJ), CITY OF TRENTON (NJ) POLICE DEPARTMENT, and AARON J. BERNSTEIN, | : : : : : : | |
| Defendants. | : : : | *Filed via ECF* |

Plaintiffs MANAL HASSAN and TAREK KHAIRALLAH, as and for their Complaint against Defendants CITY OF TRENTON (NJ), CITY OF TRENTON (NJ) POLICE DEPARTMENT, and AARON J. BERNSTEIN, allege as follows:

## Parties

1.      Plaintiff Manal Hassan is a resident of the State of New Jersey, county of Middlesex.

2.      Plaintiff Tarek Khairallah is a resident of the State of New Jersey, county of Middlesex.

3.      Defendant City of Trenton is a municipality duly formed under the law of the State of New Jersey and existing within Mercer County, New Jersey.

4.      Defendant City of Trenton is the legal entity responsible for all actions engaged in by Defendant City of Trenton Police Department ("TPD").   For the

purposes of all causes of action pleaded herein under N.J.S.A. 10:6-2, et seq., Defendants City of Trenton and the TPD are persons under law.

5.      Defendant City of Trenton Police Department is a policymaking agency and/or department of Defendant City of Trenton, duly organized and existing under the laws of the State of New Jersey.

6.      Defendant City of Trenton Police Department was responsible for the hiring, supervision, training, and retention of police officers in the City of Trenton and all other respective duties of a municipal law enforcement agency.

7.      Defendant Aaron J. Bernstein is a resident of the State of New Jersey, County of Monmouth.

## Jurisdiction and Venue

8.      At all relevant times, Defendant Aaron J. Bernstein was a police officer employed by Defendants City of Trenton and TPD.

9.      This Court has original jurisdiction pursuant to 28 U.S.C. §1331 because Plaintiffs assert claims that arise under the laws of the United States, namely, 42 U.S.C. §1983 (Deprivation of civil rights), 42 U.S.C. §1981 (equal rights), and U.S. Const. Amend IV (unreasonable searches and seizures).

10.     This Court has supplemental jurisdiction over Plaintiffs' state-law claims pursuant to 28 U.S.C. §1367 because those claims are so related to Plaintiffs' federal-question claims that they form part of the same case or controversy.

11.    The Court has personal jurisdiction over Defendants because Defendants are all residents of the State of New Jersey, and this case arises out of Defendants' acts occurring in New Jersey.

12.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2), as all the events giving rise to Plaintiffs' claims occurred in Manalapan, New Jersey, which is within this judicial district.

## Facts Relevant to All Counts

13.    This matter involves the use of unjustified, inexplicable, and excessive force by Defendant Bernstein while an officer with the Defendants City of Trenton and TPD during a traffic incident in which he rear ended Plaintiff Manal Hassan.

14.    At the outset, Plaintiffs filed a complaint with Defendants City of Trenton and TPD.  Plaintiffs' attempt to have the incident investigated and handled appropriately by Defendants was unsuccessful.  Instead, Defendants attempted to cover up their wrongdoing.  Despite overwhelming evidence, including a detailed local police report, eyewitness testimony, and admissions by Defendant Bernstein, Defendant TPD "exonerated" the actions of Defendant Bernstein described below.

15.    Defendants City of Trenton and TPD are no strangers to claims of excessive violence.  On October 17, 2023, the United States Department of Justice announced its launch of a civil rights investigation of Defendant TPD that will review "serious and credible" complaints that TPD officers have conducted a pattern of excessive force or unlawful stops and searches.  Federal authorities consider this a "pattern-or-practice" investigation, which comes after reviewing media reports,

court records, body-worn camera footage, and statistical data about police interactions. The Department of Justice specifically found problematic examples of excessive force during minor traffic incidents, such as the one detailed below and at issue in this case.

16. Plaintiff Manal Hassan ("Ms. Hassan") is Arabic-American.

17. Plaintiff Tarek Khairallah is the husband of Ms. Hassan.

18. Ms. Hassan is originally from Egypt.

19. Ms. Hassan is Muslim.

20. On July 13, 2022, Ms. Hassan was traveling in her vehicle, a black 2019 Ford Expedition, on her way to the Wegman's supermarket in on Route 9 in Manalapan.

21. At approximately 4:00 p.m., Ms. Hassan was traveling west on Ryan Road in Manalapan, New Jersey.

22. Ms. Hassan was stopped at a red light in the left turn at the intersection of Ryan Road and U.S. Route 9. It was her intention to turn left onto U.S. Route 9 South and enter the nearby Wegman's shopping plaza.

23. Although Ms. Hassan had the right of way, when the traffic light turned green, Ms. Hassan allowed a vehicle to turn left in front of her to exit the jug handle from U.S. Route 9 North onto Ryan Road.

24. When Ms. Hassan began to move forward after letting the vehicle turn left in front of her, another vehicle attempted to cut her off by turning left in front of her to exit the jug handle from Route 9 North.

25.     Ms. Hassan, having the right of way, did not let the additional vehicle turn in front of her.

26.     The vehicle that attempted to turn left in front of Ms. Hassan was a black 2020 Hyundai Santa Fe operated by Defendant Aaron Bernstein.

27.     Defendant Bernstein observed Ms. Hassan in her vehicle when he attempted to turn left in front of her.

28.     There are two left turn lanes from Ryan Road onto Route 9 South and both Ms. Hassan and Defendant Bernstein turned left onto Route 9 South.

29.     Ms. Hassan was in the leftmost lane of Ryan Road and turned into the leftmost lane on Route 9 South.

30.     There was a considerable amount of traffic on Route 9 South at the time and vehicles were travelling at approximately 5 miles per hour.

31.     It was Ms. Hassan's intention to enter the Wegman's shopping plaza from Route 9 South, which is a right turn.

32.     Ms. Hassan therefore engaged her turn signal and began to move from the leftmost lane to the middle lane, with the intention of then crossing into the rightmost lane to make the right turn into the Wegman's parking lot.

33.     After Ms. Hassan entered the middle lane, she kept her turn signal engaged and began merging into the rightmost lane.

34.     Ms. Hassan began to merge into the rightmost lane of Route 9 South directly in front of Defendant Bernstein's vehicle.

35.   Ms. Hassan then attempted to turn right into the Wegman's shopping plaza.

36.   As she attempted to navigate the turn, Ms. Hassan's vehicle was rear-ended by Defendant Bernstein's vehicle.

37.   Defendant Bernstein is an officer with the TPD.

38.   At all relevant times, Defendant Bernstein was not on official duty.

39.   Defendant Bernstein exited his vehicle and approached Ms. Hassan's vehicle on the driver side.

40.   Defendant Bernstein angrily charged toward Ms. Hassan's car, prompting her to call emergency services (9-1-1).

41.   Ms. Hassan connected with a 9-1-1 operator less than a minute before Defendant Bernstein arrived at her driver side door.

42.   While Ms. Hassan was providing her location to the 9-1-1 operator, Defendant Bernstein arrived at the driver's side of Ms. Hassan's vehicle with his weapon was drawn and pointed at Ms. Hassan.

43.   Ms. Hassan informed the 9-1-1 operator "this guy just pulled a gun on me…"

44.   Defendant Bernstein was not in police uniform.

45.   Defendant Bernstein did not display a badge or any other identification of himself as a police officer.

46.   With a firearm pointed at Ms. Hassan, Defendant Bernstein proceed to yell at Ms. Hassan, at least twice demanding that she exit her vehicle.

47.     Defendant Bernstein used obscenities and screamed "I'm going to f---
you up" with the firearm pointed at Ms. Hassan.

48.     Defendant Bernstein unsuccessfully tried to open the driver door,
pounded on Ms. Hassan's vehicle with his fists and kicked her driver side door,
leaving a shoe impression.

49.     At some point during Defendant Bernstein's tirade, he stated that he
was with the Trenton Police.

50.     Based on Defendant Bernstein's behavior, Ms. Hassan did not believe
he was a police officer, she believed he was a crazy man.

51.     Ms. Hassan, afraid for her life, did not exit her vehicle.

52.     While on the telephone with the 9-1-1 operator, Ms. Hassan noticed
that Defendant Bernstein was wearing a shirt that said Trenton Police on it.

53.     Also while on the telephone with 9-1-1, Ms. Hassan stated "What kind
of police officer kicks somebody's door in?  If you're a police officer, you're supposed
to help us not hurt us."

54.     Ms. Hassan never left her vehicle.  Approximately 6 minutes after Ms.
Hassan placed the 9-1-1 call, officers from the Manalapan Police Department
arrived at the scene, where they found Ms. Hassan still insider her vehicle.

55.     Although Manalapan police performed an investigation of the incident
and prepared a detailed report, including taking typed statements from Ms. Hassan
and an eyewitness, Defendant Bernstein refused to provide a formal statement.

56.     Manalapan police Detective D. Donatelli contacted Defendant Bernstein via telephone the night of the incident.

57.     During the conversation between Det. Donatelli and Defendant Bernstein, Defendant Bernstein advised that he was retaining an attorney.

58.     Det. Donatelli provided his contact information to Defendant Bernstein and asked that it be provided to the attorney.

59.     On July 14, 2022, Det. Donatelli received a voice message from Stuart J. Alterman, Esq. who identified himself as Defendant Bernstein's attorney.

60.     Det. Donatelli attempted to contact Mr. Alterman via telephone with negative results.

61.     As of 3:18 p.m. on Friday, July 15, 2022, Det. Donatelli had not received a return call from Mr. Alterman.

62.     Upon information and belief, no statement was ever obtained by Det. Donatelli and notwithstanding that fact, the case was closed without explanation.

63.     After the incident, Ms. Hassan communicated with the Monmouth County Prosecutor's Office.

64.     Detective Sergeant Washburne of the Monmouth County Prosecutor's Office told Ms. Hassan that criminal charges would not be pursued by the Monmouth County Prosecutor.

65.     Ms. Hassan was also told the case had been transferred to the Mercer County Prosecutor's Office for investigation.

66.     Upon information and belief, this case was not transferred to the Mercer County Prosecutor's Office and there is no evidence the Mercer County or Monmouth County Prosecutor's offices ever investigated this case.

67.     Counsel for Ms. Hassan attempted to contact the Monmouth County Prosecutor's office regarding this case.

68.     Other than an acknowledgment e-mail, no response was received from the Monmouth County Prosecutor's Office.

69.     A complaint was filed with the TPD Internal Affairs Unit.

70.     On September 13, 2022, Ms. Hassan and her counsel appeared for an interview by TPD  in connection with TPD's investigation of the incident.

71.     On September 24, 2022, Ms. Hassan received a letter from TPD Internal Affairs Unit.

72.     The September 24, 2022 letter stated that the TPD had completed its investigation of the incident.

73.     The TPD found that "the investigation revealed that the actions of the officers were lawful, reasonable and justified and in compliance with the New Jersey Attorney General Guideline."

74.     The actions of Defendant Bernstein objectively were not lawful, reasonable, justified, or in compliance with the New Jersey Attorney General Guidelines.

75.     At all relevant times, Defendant Bernstein was acting withing the scope of his authority as a police officer for the Trenton Defendants.

76.     At all relevant times, Defendant Bernstein was not acting withing the scope of his authority as a police officer for the Trenton Defendants.

77.     On September 30, 2022, Ms. Hassan filed a notice of tort claim with the Trenton Defendants.

78.     Ms. Hassan's notice of tort claim was acknowledged by the Trenton Defendants from Jermain Lee of the City Clerk's office On October 7, 2022.

79.     Six months have passed since Ms. Hassan's notice of tort claim was filed and there has been no substantive response from the Trenton Defendants.

## Count I
## (Violation of Civil Rights under Color of State Law - 42 U.S.C. §1983)

80.     Plaintiffs repeat the allegations contained in Paragraphs 1-79 as though stated here in full.

81.     At all relevant times, and pursuant to 42 U.S.C. §1983, Plaintiff Manal Hassan was and is entitled to be free from the deprivation of any rights, privileges, or immunities secured by the Constitution and laws of any State under color of any statute, ordinance, regulation, custom, or usage, of any State.

82.     At all relevant times, Plaintiff Manal Hassan was within the jurisdiction of the United States.

83.     At all relevant times, Defendants were acting under the color of state law because Defendants are government actors.

84.     The relevant conduct of Defendants constitutes unreasonable force and/or excessive force, and potentially even the misuse of deadly force, in violation of Ms. Hassan's federal and state rights, including U.S. Const. Amend. IV, N.J.

Const. Art. I, the New Jersey Civil Rights Act (N.J.S.A. §10:6-2), 42 U.S.C. §1981 (discrimination) and the New Jersey Law Against Discrimination (N.J.S.A. §10:5-1 et seq.).

85.    The manner in which Defendants treated Ms. Hassan after a minor vehicular accident in which Defendant Bernstein was at fault was excessive and unreasonable and constituted the use of excessive and unreasonable force.

86.    Defendants' use of force, including assaulting Ms. Hassan and pointing a deadly weapon at Ms. Hassan, was unreasonable and unconstitutional, thereby violating Ms. Hassan's rights to be free from unlawful searches and seizures under U.S. Const. Amend. IV.

87.    Defendants' use of force, including assaulting Ms. Hassan and pointing a deadly weapon at Ms. Hassan, was unreasonable and unconstitutional, thereby violating Ms. Hassan's rights to be free from unlawful searches and seizures under N.J. Const. Art. I, Paragraph 7.

88.    Defendants' use of force, including assaulting Ms. Hassan and pointing a deadly weapon at Ms. Hassan, was unreasonable and unconstitutional, thereby violating Ms. Hassan's rights to be free from unlawful searches and seizures under N.J. Const. Art. I, Paragraph 1.

89.    Defendants' use of force, including assaulting Ms. Hassan and pointing a deadly weapon at Ms. Hassan, solely on the basis of her ethnicity violated Ms. Hassan's civil rights to be free from discrimination under 42 U.S.C. §1981.

90.     Defendants' actions toward Ms. Hassan had no basis in the safety of Defendant Bernstein or the public at large.

91.     Defendants' actions toward Ms. Hassan had no basis in fact or any rational or reasonable basis.

92.     Defendants' unlawful deprivation of Ms. Hassan's federal and state rights directly and proximately caused Plaintiff damages in the form of embarrassment, humiliation, fright, shock, mental anguish, emotional distress, loss of reputation, and denial of social pleasure and enjoyments.

**WHEREFORE**, Plaintiffs demand judgment against Defendants as follows:

i.      for general damages in an amount to be determined at trial, but in no event less than ten million dollars ($10,000,000.00);

ii.     for special damages in an amount to be determined at trial;

iii.    for punitive damages in the amount of one hundred million dollars ($100,000,000.00);

iv.     for the costs and attorneys' fees incurred in this matter as permitted by statute; and

v.      for such other and further relief as the Court deems just and proper.

## Count II
### (42 U.S.C. §1983 – Deliberate Indifference)

93.　Plaintiffs repeat the allegations contained in Paragraphs 1-92 as though stated here in full.

94.　Defendants know that the use of excessive, unreasonable, and deadly force carries a substantial risk of physical and emotional harm.

95.　Defendants' actions toward Ms. Hassan intentionally and consciously disregarded the known risks associated with the use of excessive, unreasonable, and deadly force.

96.　There is no justification for Defendant Bernstein's use of excessive, unreasonable, and deadly force in a minor vehicular accident in which he was at fault.

97.　As a direct and proximal result of Defendants' actions, Ms. Hassan suffered the specific emotional harm that was the known and substantial risk of Defendants' conduct.

**WHEREFORE**, Plaintiffs demand judgment against Defendants as follows:

　　i.　for general damages in an amount to be determined at trial, but in no event less than ten million dollars ($10,000,000.00);

　　ii.　for special damages in an amount to be determined at trial;

　　iii. for punitive damages in the amount of one hundred million dollars ($100,000,000.00);

　　iv. for the costs and attorneys' fees incurred in this matter as permitted by statute; and

v. for such other and further relief as the Court deems just and proper.

**Count III**
**(Denial of Equal Rights Under the Law – 42 U.S.C. §1981)**

98.     Plaintiffs repeat the allegations contained in Paragraphs 1-97 as though stated here in full.

99.     At all material times, and pursuant to 42 U.S.C. §1981, Ms. Hassan was and is entitled to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens.

100.    Prior to the encounter between Defendant Bernstein and Ms. Hassan, Defendant Bernstein observed Ms. Hassan in her vehicle.

101.    Ms. Hassan is of Arabic ethnicity, specifically, she is from Egypt.

102.    Defendants denied Ms. Hassan full and equal treatment under the laws of the United States when they used unreasonable, excessive, and deadly force against her solely because she is of Arabic ethnicity.

103.    Defendants denied Ms. Hassan full and equal treatment under the laws of the United States when Defendant Bernstein verbally assaulted Ms. Hassan solely because she is of Arabic ethnicity.

104.    Defendants denied Ms. Hassan full and equal treatment under the laws of the United States when Defendant Bernstein physically assaulted Ms. Hassan solely because she is of Arabic ethnicity.

105.    Defendants denied Ms. Hassan full and equal treatment under the laws of the United States when Defendant Bernstein pointed a firearm at Ms. Hassan solely because she is of Arabic ethnicity.

106.   Defendants denied Ms. Hassan full and equal treatment under the laws of the United States when Defendant Bernstein made terroristic threats at Ms. Hassan solely because she is of Arabic ethnicity.

107.   Defendants' actions toward Ms. Hassan had no basis in the safety of Defendant Bernstein or the public at large.

108.   Defendants' actions toward Ms. Hassan had no basis in fact or any rational or reasonable basis, other than unlawful discrimination on the basis of ethnicity.

109.   Defendants deprived Plaintiff of the equal benefit of the laws of the United States and the State of New Jersey solely on the basis of ethnicity.

110.   Defendants' unlawful deprivation of Ms. Hassan's right to equal benefit of the laws of the United States and the State of New Jersey caused Plaintiffs damages in the form of embarrassment, humiliation, fright, shock, mental anguish, emotional distress, exacerbation of a previously existing anxiety disorder, loss of reputation, and denial of social pleasure and enjoyments.

**WHEREFORE**, Plaintiffs demand judgment against Defendants as follows:

i.   for general damages in an amount to be determined at trial, but in no event less than ten million dollars ($10,000,000.00);

ii.   for special damages in an amount to be determined at trial;

iii. for punitive damages in the amount of one hundred million dollars ($100,000,000.00);

iv. for the costs and attorneys' fees incurred in this matter as permitted by statute; and

v. for such other and further relief as the Court deems just and proper.

## Count IV
### (New Jersey Civil Rights Act - N.J.S.A. §10:6-2)

111.   Plaintiffs repeat the allegations contained in Paragraphs 1-110 as though stated here in full.

112.   At all relevant times, and pursuant to N.J.S.A. §10:6-2, Plaintiff Manal Hassan was and is entitled to be free from the deprivation of any substantive due process or equal protection rights, privileges or immunities secured by the U.S. Constitution or laws of the United States, or any substantive rights, privileges or immunities secured by the Constitution or laws of New Jersey.

113.   At all relevant times, Plaintiff Manal Hassan was within the jurisdiction of the State of New Jersey.

114.   At all relevant times, Defendants were acting under the color of state law because Defendants are government actors.

115.   The relevant conduct of Defendants constitutes unreasonable force and/or excessive force, and potentially even the misuse of deadly force, in violation of Ms. Hassan's federal and state rights, including U.S. Const. Amend. IV, N.J. Const. Art. I, and 42 U.S.C. §§1981 and 1983.

116.   The manner in which Defendants treated Ms. Hassan after a minor vehicular accident in which Defendant Bernstein was at fault was excessive and unreasonable and constituted the use of excessive and unreasonable force.

117.   Defendants' use of force, including assaulting Ms. Hassan and pointing a deadly weapon at Ms. Hassan, was unreasonable and unconstitutional, thereby violating Ms. Hassan's rights to be free from unlawful searches and seizures under U.S. Const. Amend. IV.

118.   Defendants' use of force, including assaulting Ms. Hassan and pointing a deadly weapon at Ms. Hassan, was unreasonable and unconstitutional, thereby violating Ms. Hassan's rights to be free from unlawful searches and seizures under N.J. Const. Art. I, Paragraph 7.

119.   Defendants' use of force, including assaulting Ms. Hassan and pointing a deadly weapon at Ms. Hassan, was unreasonable and unconstitutional, thereby violating Ms. Hassan's rights to be free from unlawful searches and seizures under N.J. Const. Art. I, Paragraph 1.

120.   Defendants' use of force, including assaulting Ms. Hassan and pointing a deadly weapon at Ms. Hassan, solely on the basis of her ethnicity violated Ms. Hassan's civil rights to be free from discrimination under 42 U.S.C. §1981.

121.   Defendants' use of force, including assaulting Ms. Hassan and pointing a deadly weapon at Ms. Hassan, solely on the basis of her ethnicity violated Ms. Hassan's civil rights under 42 U.S.C. §1983.

122.   Defendants' actions toward Ms. Hassan had no basis in the safety of Defendant Bernstein or the public at large.

123.   Defendants' actions toward Ms. Hassan had no basis in fact or any rational or reasonable basis.

124.    Defendants' unlawful deprivation of Ms. Hassan's federal and state rights directly and proximately caused Plaintiff damages in the form of embarrassment, humiliation, fright, shock, mental anguish, emotional distress, loss of reputation, and denial of social pleasure and enjoyments.

**WHEREFORE**, Plaintiffs demand judgment against Defendants as follows:

i.      for general damages in an amount to be determined at trial, but in no event less than ten million dollars ($10,000,000.00);

ii.     for special damages in an amount to be determined at trial;

iii.    for punitive damages in the amount of one hundred million dollars ($100,000,000.00);

iv.     for the costs and attorneys' fees incurred in this matter as permitted by statute; and

vi. for such other and further relief as the Court deems just and proper.

### Count V
### (False Imprisonment)

125.    Plaintiffs repeats the allegations contained in Paragraphs 1-124 as though stated here in full.

126.    At all relevant times, Defendants' actions, and specifically Defendant Bernstein's conduct toward Ms. Hassan, actually and constructively detained and imprisoned Ms. Hassan in her vehicle.

127.    Defendants' actions in causing Ms. Hassan's detention and imprisonment had no basis in the safety of Defendant Bernstein or the public at large.

128.   Defendants' actions in causing Ms. Hassan's detention and imprisonment had no basis in fact or any rational or reasonable basis, other than a violation of Ms. Hassan's civil rights.

129.   There was no legal authority for Defendants' causing Ms. Hassan's detention and imprisonment.

130.   There was no legal justification for Defendants' causing Ms. Hassan's detention and imprisonment.

131.   Defendants' unlawful detention and imprisonment of Ms. Hassan caused Plaintiffs damages in the form of embarrassment, humiliation, fright, shock, mental anguish, emotional distress, exacerbation of a previously existing anxiety disorder, loss of reputation, and denial of social pleasure and enjoyments.

**WHEREFORE**, Plaintiffs demand judgment against Defendants as follows:

i.      for general damages in an amount to be determined at trial, but in no event less than ten million dollars ($10,000,000.00);

ii.     for special damages in an amount to be determined at trial;

iii.    for punitive damages in the amount of one hundred million dollars ($100,000,000.00);

iv.     for the costs and attorneys' fees incurred in this matter as permitted by statute; and

v.      for such other and further relief as the Court deems just and proper.

**Count VI**
**(Negligent Infliction of Emotional Distress)**

132.   Plaintiff repeats the allegations contained in Paragraphs 1-131 as though stated here in full.

133.   Defendants owed a duty of care to Plaintiffs to prevent any injury to Plaintiffs that was reasonably foreseeable.

134.   Defendants' duty of care to Plaintiffs included the duties not to violate Ms. Hassan's civil rights and not to subject her to false imprisonment.

135.   Defendants, through Defendant Bernstein, breached their duty of care to Plaintiffs by subjecting Ms. Hassan to unreasonable, excessive, and deadly force.

136.   Defendants, through Defendant Bernstein, breached their duty of care to Plaintiffs by subjecting Ms. Hassan to discrimination based in ethnicity.

137.   Defendants, through Defendant Bernstein, breached their duty of care to Plaintiffs by subjecting Ms. Hassan to the deprivation of rights, privileges, or immunities secured by the United States Constitution, the New Jersey Constitution, and the laws of the State of New Jersey under color of law.

138.   Defendants, through Defendant Bernstein, breached their duty of care to Plaintiffs by subjecting Ms. Hassan to false imprisonment.

139.   It was reasonably foreseeable that violating Ms. Hassan's civil rights could result in physical or emotional injury to Plaintiffs.

140.   It was reasonably foreseeable that discriminating against Ms. Hassan could result in physical or emotional injury to Plaintiffs.

141.   It was reasonably foreseeable that falsely imprisoning Ms. Hassan could result in physical or emotional injury to Plaintiffs.

142.   Defendants' treatment of Ms. Hassan was a breach of Defendants' duties of care to Plaintiffs under the circumstances.

143.   Defendants' treatment of Ms. Hassan put Plaintiffs' physical and emotional well-being at direct risk.

144.   Defendants' actions toward Ms. Hassan, including the violation of her civil rights, discrimination, and false imprisonment, had no basis in the safety of Defendant Bernstein or the public at large.

145.   Defendants' actions toward Ms. Hassan, including the violation of her civil rights, discrimination, and false imprisonment had no basis in fact or any rational or reasonable basis, other than discrimination based on ethnicity.

146.   There was no legal authority or justification for Defendants' actions toward Ms. Hassan.

147.   It was reasonably foreseeable that Defendants' actions toward Ms. Hassan, including violating her civil rights, discrimination, and false imprisonment could result in physical or emotional injury to Plaintiffs.

148.   Defendants breached their duty to Plaintiffs by violating her civil rights, discriminating against her, and falsely imprisoning her under the circumstances.

149.   Defendants' actions toward Ms. Hassan were the actual and proximate cause of genuine and substantial emotional distress to Plaintiffs.

**WHEREFORE**, Plaintiffs demand judgment against Defendants as follows:

i.  for general damages in an amount to be determined at trial, but in no event less than ten million dollars ($10,000,000.00);

ii.  for special damages in an amount to be determined at trial;

iii. for punitive damages in the amount of one hundred million dollars ($100,000,000.00);

iv.  for the costs and attorneys' fees incurred in this matter; and

v.  for such other and further relief as the Court deems just and proper.

**Count VII**
**(Intentional Infliction of Emotional Distress)**

150.   Plaintiffs repeat the allegations contained in Paragraphs 1-149 as though stated here in full.

151.   Defendants' actions toward Ms. Hassan, including the violation of her civil rights, discrimination, and false imprisonment police constitutes intentional and outrageous conduct.

152.   By reason of the actions taken against Ms. Hassan, Defendants were in a position of apparent authority over Ms. Hassan.

153.   Defendants used their position of authority to further their intentional and outrageous conduct by depriving Ms. Hassan of her civil rights and falsely imprisoning her.

154.   Defendants' position of apparent authority over Ms. Hassan enhances the outrageousness of their conduct.

155.   The actions taken by Defendants against Ms. Hassan were so outrageous and extreme as to go beyond all possible bounds of decency.

156.   The civil rights violations, racism, and false imprisonment inflicted on Ms. Hassan by Defendants is atrocious and utterly intolerable in a civilized community.

157.   Defendants' intentional treatment of Ms. Hassan is and was the actual and proximate cause of genuine and substantial emotional distress to Plaintiffs.

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

i.   for general damages in an amount to be determined at trial, but in no event less than ten million dollars ($10,000,000.00);

ii.   for special damages in an amount to be determined at trial;

iii.   for punitive damages in the amount of one hundred million dollars ($100,000,000.00);

iv.   for the costs and attorneys' fees incurred in this matter; and

v.   for such other and further relief as the Court deems just and proper.

### Count VIII
### (Negligent Hiring)

158.   Plaintiffs repeats the allegations contained in Paragraphs 1-157 as though stated here in full.

159.   The Trenton Defendants knew or should have known that Defendant Bernstein was unfit, incompetent, and had dangerous attributes; specifically, that Defendant Bernstein was prone to angry outbursts and the improper use of

unreasonable, excessive, and deadly force and did not possess the demeanor to treat all citizens equally.

160.   The Trenton Defendants reasonably could have foreseen that Defendant Bernstein created a risk of harm to other persons.

161.   The Trenton Defendants therefore owed a duty of care to Plaintiffs to protect them from the risk of harm presented by Defendants Bernstein.

162.   The Trenton Defendants breached their duty of care to Plaintiffs by hiring Defendants Bernstein notwithstanding that the Trenton Defendants new or should have known that Defendant Bernstein was unfit, incompetent, and had dangerous attributes.

163.   Due to the Trenton Defendants' negligence in hiring Defendant Bernstein, Defendants Bernstein's incompetence, unfitness and/or dangerous attributes were the actual and proximate caused the Plaintiffs' injuries including severe emotional distress.

**WHEREFORE**, Plaintiffs demands judgment against Defendants as follows:

i.   for general damages in an amount to be determined at trial, but in no event less than ten million dollars ($10,000,000.00);

ii.   for special damages in an amount to be determined at trial;

iii. for punitive damages in the amount of one hundred million dollars ($100,000,000.00);

iv. for the costs and attorneys' fees incurred in this matter; and

v.   for such other and further relief as the Court deems just and proper.

## Count IX
## (Negligent Training)

164.   Plaintiffs repeat the allegations contained in Paragraphs 1-163 as though stated here in full.

165.   The Trenton knew or should have known that failure to properly train Defendant Bernstein would create a risk of harm to Plaintiffs and other members of the public at large.

166.   The Trenton Defendants knew or should have known that the failure to train Defendant Bernstein on the appropriate use of force, anger management, and false imprisonment created a risk of harm to other persons that could result in physical or emotional injury to Plaintiffs and the public at large.

167.   The Trenton Defendants knew or should have known that the failure to train Defendant Bernstein on applicable statutes and regulations governing the equal treatment of citizens (non-discrimination) created a risk of harm that could result in physical or emotional injury to Plaintiffs and the other protected classes at large.

168.   The Trenton Defendants owed a duty of care to Plaintiffs to properly train Defendants Bernstein.

169.   The Trenton Defendants breached their duty of care to Plaintiffs by failing to properly train Defendants Bernstein notwithstanding that the Trenton Defendants knew or should have known that failure to properly train their police

officers created a risk of harm that could result in serious physical or emotional injury to Plaintiffs and the public at large.

170.   The Trenton Defendants' negligence in failing to train Defendant Bernstein, was an actual and proximate cause of Plaintiffs' injuries, including severe emotional distress.

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

i.   for general damages in an amount to be determined at trial, but in no event less than ten million dollars ($10,000,000.00);

ii.   for special damages in an amount to be determined at trial;

iii.  for punitive damages in the amount of one hundred million dollars ($100,000,000.00);

iv.  for the costs and attorneys' fees incurred in this matter; and

v.   for such other and further relief as the Court deems just and proper.

### Count X
### (Negligent Supervision)

171.   Plaintiffs repeat the allegations contained in Paragraphs 1-170 as though stated here in full.

172.   The Trenton Defendants knew or should have known that failure to properly supervise Defendant Bernstein would create a risk of harm to Plaintiffs and the public at large.

173.   The Trenton Defendants knew or should have known that the failure to supervise Defendant Bernstein in the exercise of his duties created a risk of harm

to other persons that could result in physical or emotional injury to Plaintiffs and the public at large.

174.   The Trenton Defendants knew or should have known that the failure to supervise Defendants Bernstein in the equal treatment of citizens created a risk of harm that could result in physical or emotional injury to passengers.

175.   The Trenton Defendants reasonably should have foreseen that the failure to supervise Defendants Bernstein in the equal treatment of citizens created a risk of harm that could result in serious physical or emotional injury to Plaintiffs and the public at large.

176.   The Trenton Defendants therefore owed a duty of care to Plaintiffs to properly supervise Defendant Bernstein.

177.   The Trenton Defendants breached their duty of care to Plaintiffs by failing to properly supervise Defendant Bernstein notwithstanding that the Trenton Defendants knew or should have known that failure to properly train their police officers created a risk of harm that could result in serious physical or emotional injury to Plaintiffs and the public at large.

178.   The Trenton Defendants negligence in failing to supervise Defendant Bernstein, was an actual and proximate cause of Plaintiffs' injuries, including severe emotional distress.

**WHEREFORE**, Plaintiffs demand judgment against Defendants as follows:

i.   for general damages in an amount to be determined at trial, but in no event less than ten million dollars ($10,000,000.00);

ii.  for special damages in an amount to be determined at trial;

iii. for punitive damages in the amount of one hundred million dollars ($100,000,000.00);

iv. for the costs and attorneys' fees incurred in this matter; and

v.  for such other and further relief as the Court deems just and proper.

### Count XI
### (Assault – Defendant Bernstein)

179.   Plaintiffs repeat the allegations contained in Paragraphs 1-178 as though stated here in full.

180.   Defendant Bernstein punched and kicked Ms. Hassan's vehicle, attempted to enter the vehicle, shouted terroristic threats, and pointed a firearm at Ms. Hassan while she was inside the vehicle.

181.   In so doing, Defendant Bernstein intended to cause harmful or offensive contact with Ms. Hassan.

182.   Alternatively, Defendant Bernstein intended to cause an imminent apprehension of harmful or offensive contact with Ms. Hassan.

183.   As a result of Defendant Bernstein's intentional conduct, Ms. Hassan imminently apprehended harmful or offensive contact from Defendant Bernstein.

184.   Defendant Bernstein's intentional actions were a direct and proximate cause of Plaintiffs' injuries.

**WHEREFORE**, Plaintiffs demand judgment against Defendant Bernstein as follows:

i.  for general damages in an amount to be determined at trial, but in no event less than ten million dollars ($10,000,000.00);

ii.  for special damages in an amount to be determined at trial;

iii.  for punitive damages in the amount of one hundred million dollars ($100,000,000.00);

iv.  for the costs and attorneys' fees incurred in this matter; and

v.  for such other and further relief as the Court deems just and proper.

## Count XII
## (Negligence – Defendant Bernstein)

185.    Plaintiffs repeat the allegations contained in Paragraphs 1-184 as though stated here in full.

186.    Defendant Bernstein owed a duty of care to Plaintiffs not to cause Ms. Hassan the imminent apprehension of harmful or offensive contact.

187.    Defendant Bernstein punched and kicked Ms. Hassan's vehicle, attempted to enter the vehicle, shouted terroristic threats, and pointed a firearm at Ms. Hassan while she was inside the vehicle.

188.    If Defendant Bernstein's actions were not intended to cause harmful or offensive contact with Ms. Hassan or intended to cause an imminent apprehension of such contact, then his actions breached his duty of care to Plaintiffs by causing an unreasonable risk of creating such apprehension.

189.    At all relevant times, Ms. Hassan had the imminent apprehension of harmful or offensive contact from Defendant Bernstein due to his actions.

190.    Defendant Bernstein's actions were the direct and proximate cause of Ms. Hassan's imminent apprehension of harmful or offensive contact.

191.    As a result of Defendant Bernstein's negligent and reckless conduct in causing Ms. Hassan the imminent apprehension of harmful or offensive contact Plaintiffs sustained cognizable injuries.

**WHEREFORE**, Plaintiffs demand judgment against Defendant Bernstein as follows:

i.    for general damages in an amount to be determined at trial, but in no event less than ten million dollars ($10,000,000.00);

ii.    for special damages in an amount to be determined at trial;

iii.    for punitive damages in the amount of one hundred million dollars ($100,000,000.00);

iv.    for the costs and attorneys' fees incurred in this matter; and

v.    for such other and further relief as the Court deems just and proper.

### Count XIII
### (Loss of Consortium)

192.    Plaintiffs repeat the allegations contained in Paragraphs 1-191 as though stated here in full.

193.    Plaintiffs are married to each other.

194.    As a direct and proximate result of Defendants' intentional and negligent acts, Plaintiff Tarek Khailallah has been deprived of the society, companionship, and services provided by his spouse, Plaintiff Manal Hassan.

**WHEREFORE**, Plaintiffs demand judgment against Defendant Bernstein as follows:

i.  for general damages in an amount to be determined at trial, but in no event less than ten million dollars ($10,000,000.00);

ii.  for special damages in an amount to be determined at trial;

iii. for punitive damages in the amount of one hundred million dollars ($100,000,000.00);

iv.  for the costs and attorneys' fees incurred in this matter; and

v.  for such other and further relief as the Court deems just and proper.

## <u>Jury Demand</u>

Plaintiff hereby demands a trial by jury on all claims and counts.

Dated:      West Orange, NJ
            October 25, 2023

                                    /s/ Jeremy Klausner
                                    Jeremy Klausner Law, P.C.
                                    *Attorney for Plaintiffs*
                                    21 Sheffield Ter.
                                    West Orange, NJ 07052
                                    (973) 671-5331
                                    jklausner@klausnerlegal.com

<u>VERIFICATION</u>

MANAL HASSAN hereby certifies the following:

1.  I am the Plaintiff herein, and as such I have personal knowledge of the facts and circumstances alleged in the foregoing Verified Complaint.

2.  I have read the foregoing Verified Complaint and know the contents thereof.

3.  The facts contained in the foregoing Verified Complaint are true to the best of my knowledge.  For those facts alleged upon information and belief, I believe them the be true.

4.  I understand that if any of the statements herein are willfully false, I am subject to the penalties for perjury.

Dated:        October 25, 2023

Manal Hassan (Oct 26, 2023 11:47 EDT)
Manal Hassan

# Hassan Complaint

Final Audit Report                                                              2023-10-26

| | |
|---|---|
| Created: | 2023-10-26 |
| By: | Jeremy Klausner (jklausner@klausnerlegal.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAeb6CNhbp4sMh4q3gdx-Fe-wydxg8mIDG |

## "Hassan Complaint" History

📄 Document created by Jeremy Klausner (jklausner@klausnerlegal.com)
2023-10-26 - 3:20:22 PM GMT- IP address: 96.37.253.234

📧 Document emailed to manalhassan68@yahoo.com for signature
2023-10-26 - 3:20:59 PM GMT

📄 Email viewed by manalhassan68@yahoo.com
2023-10-26 - 3:40:15 PM GMT- IP address: 104.28.55.231

✍️ Signer manalhassan68@yahoo.com entered name at signing as Manal Hassan
2023-10-26 - 3:46:59 PM GMT- IP address: 172.59.210.9

✍️ Document e-signed by Manal Hassan (manalhassan68@yahoo.com)
Signature Date: 2023-10-26 - 3:47:01 PM GMT - Time Source: server- IP address: 172.59.210.9

✅ Agreement completed.
2023-10-26 - 3:47:01 PM GMT

Adobe Acrobat Sign